**No. 25-40300**

IN THE UNITED STATES COURT OF
APPEALS FOR THE FIFTH CIRCUIT

---

**UNITED STATES OF AMERICA**
*Plaintiff-Appellee*

v.

**QUANITA SHERRIES BROWN**
*Defendant-Appellant*

---

On Appeal from the United States District Court
for the Eastern District of Texas, Sherman Division
No. 4:22-CR-00063, The Honorable Amos L. Mazzant, III Presiding

---

**APPELLANT'S BRIEF**

---

J. Joseph Mongaras, Jr.
Texas Bar No. 24039975
jjm@udashenanton.com

Udashen | Anton
8150 N. Central Expressway
Suite M1101
Dallas, Texas 75206
(214) 468-8100
(214) 468-8104 - fax

*Attorney for Quanita Brown*

## Certificate of Interested Parties

### No. 25-40300

UNITED STATES OF AMERICA

*Plaintiff-Appellee*

v.

QUANITA SHERRIES BROWN

*Defendant-Appellant*

The undersigned counsel of record certifies the following listed persons have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate their possible recusal or disqualification:

1.  District Judge:

    The Honorable Amos L. Mazzant, III

2. United States of America, Appellee, is represented in the Fifth Circuit by:

    Bradley Elliot Visosky
    101 E. Park Boulevard, Suite 500
    Plano, Texas 75074

The United States was represented in the district court by:

    Christopher Rapp
    101 E. Park Blvd.
    Suite 500
    Plano, Texas 75074

3. Quanita Brown, Appellant, is represented in the Fifth Circuit by:

    J. Joseph Mongaras, Jr.
    8150 N. Central Expressway

2

Suite M1101
Dallas, Texas 75206

Appellant was represented in the district court by:

Heather Fisher
1104 N. Locust Street
Denton, Texas 76201

Philip David Ray
2770 Main Street # 261
Frisco, Texas 75033

/s/ *J. Joseph Mongaras, Jr.*
J. Joseph Mongaras, Jr.

## **<u>Statement Regarding Oral Argument</u>**

Brown believes that oral argument might be necessary to resolve the presented issues.

**Table of Contents**

Certificate of Interested Parties...........................................................................2

Statement Regarding Oral Argument ...................................................................4

Table of Contents ................................................................................................5

Table of Authorities ...........................................................................................8

Statement of Jurisdiction...................................................................................10

Statement of Issues for Review.........................................................................11

      1.      Whether the evidence is legally insufficient to support the
            jury's guilty verdict. ...............................................................................11

      2.      Whether the district court plainly erred by admitting expert
            testimony about fentanyl. ......................................................................11

      3.      Whether the district court plainly erred by failing to apply a
            two-level downward adjustment under U.S.S.G. § 3B1.2(b)
            because Brown played a minor role. ....................................................11

Statement of the Case........................................................................................12

      1.      Prior to trial, Brown insisted that she did not know the vehicle
            she picked up at the behest of her co-defendant contained drugs......12

      2.      A jury convicted Brown of conspiring to distribute drugs.................14

            a.      The Government failed to present any testimony
                    regarding a drug conspiracy.......................................................14

            b.      Through cross-examination of the government's
                    witnesses, the defense provided the jury with the full
                    context of the relationship between Brown and Nero. ............19

      3.      At sentencing, the district court imposed a 188-month sentence.......21

Summary of the Arguments ...............................................................................22

Arguments ............................................................................................23

    1.    The evidence is legally insufficient to support the jury's guilty verdicts. ............................................................................23

        a.    This Court's review should be de novo. ...............................23

        b.    The Government failed to prove that Brown knowingly entered into an agreement. .......................................................25

        c.    The Government failed to prove that Brown intentionally or knowingly participated in a conspiracy ..............................28

        d.    The government failed to prove that Brown had knowledge of the amounts of drugs contained in the rental vehicle. ...................................................................33

    2.    The trial court admitted improper expert testimony about the logistics surrounding the distribution of fentanyl. ...........................35

        a.    The expert provided testimony about the production of fentanyl and its street value. ..................................................35

        b.    Because Brown's attorney did not object to the admission of the testimony, this Court reviews for plain error .................36

        c.    The error was plain. ...............................................................37

        d.    The testimony affected Brown's substantial rights. ..............40

    3.    The district court committed plain error by failing to apply a two-level downward adjustment under U.S.S.G. § 3B1.2(b) because Brown played a minor role. .............................................41

        a.    This Court reviews for plain error. .........................................41

        b.    Brown clearly acted in a minor role. ......................................42

        c.    The district court's failure to account for Brown's minor role by a two-level adjustment substantially affected her rights. ...........................................................................44

Conclusion ..................................................................................................45

Certificate of Service ...............................................................................46

Certificate of Service to Appellant ........................................................46

Certificate of Compliance .......................................................................47

## Table of Authorities

**Cases**

*Puckett v. United States*, 556 U.S. 129 (2009) ........................................................45

*United States v. Blocker*, 612 F.3d 413 (5th Cir. 2010)..............................................44

*United States v. Bowen*, 818 F.3d 179 (5th Cir. 2016) .............................................24

*United States v. Brooks*, 681 F.3d 678 (5th Cir. 2012)..............................................26

*United States v. Brown*, 727 F.3d 329 (5th Cir. 2013) .............................................23

*United States v. Daniels*, 930 F.3d 393 (5th Cir. 2019)...............................................23

*United States v. Davis*, 666 F.2d 195 (5th Cir. 1982)................................................27

*United States v. Delgado*, 672 F.3d 320 (5th Cir. 2012) ...........................................28

*United States v. Dominguez Benitez*, 542 U.S. 74 (2004) .........................................36

*United States v. Duckett*, 550 F.2d 1027 (5th Cir. 1977)...........................................28

*United States v. Fitzharris*, 633 F.2d 416 (5th Cir. 1980)........................................24

*United States v. Fuller*, 974 F.2d 1474 (5th Cir. 1992).............................................39

*United States v. Garcia*, 567 F.3d 721 (5th Cir. 2009)...............................................36

*United States v. Gonzalez*, 907 F.3d 869 (5th Cir. 2018) ...........................................33

*United States v. Gonzalez-Terrazas*, 529 F.3d 293 (5th Cir. 2008) .......................45

*United States v. Haines*, 803 F.3d 713 (5th Cir. 2015)...............................................33

*United States v. Hall*, 653 F.2d 1002 (5th Cir. 1991)................................................39

*United States v. Holmes*, 406 F.3d 337 (5th Cir. 2005)................................... 36, 40

*United States v. Jeffries*, 587 F.3d 690 (5th Cir. 2009) .............................................41

*United States v. John*, 597 F.3d 263 (5th Cir. 2010) ...................................... 44, 45

*United States v. Long*, 905 F.2d 1572 (D.C. Cir. 1990) ...........................................24

*United States v. Maldonado*, No. 23-50056, 2024 WL 962377 (5th Cir. 2024) .....41

*United States v. Mares*, 402 F.3d 511 (5th Cir. 2005)..................................... 37, 41

*United States v. Martinez-Larraga*, 517 F.3d 258 (5th Cir. 2008).........................41

*United States v. McClaren*, 13 F.4th 386 (5th Cir. 2021)..........................................34

*United States v. Michelena-Orovio*, 719 F.2d 738 (5th Cir. 1983) ........................28

*United States v. Miles*, 360 F.3d 472 (5th Cir. 2004) ...............................................24

*United States v. Nora*, 988 F.3d 823 (5th Cir. 2021)................................................26

*United States v. Olano*, 507 U.S. 725 (1993) ..........................................................36

*United States v. Pettigrew*, 77 F.3d 1500 (5th Cir. 1996) ........................................24

*United States v. Ramirez-Velasquez*, 322 F.3d 868 (5th Cir. 2003) ........................36

*United States v. Ritz*, 548 F.2d 510 (5th Cir. 1977).................................................28

*United States v. Suarez*, 879 F.3d 626 (5th Cir. 2018) .............................................28

*United States v. Thomas*, 690 F.3d 358 (5th Cir. 2012) ...........................................25

*United States v. Villanueva*, 408 F.3d 193 (5th Cir. 2005)......................................43

*United States v. Washington*, 480 F.3d 309 (5th Cir. 2007)....................................41

*United States v. Watkins*, 591 F.3d 780 (5th Cir. 2009) ...........................................25

*United States v. Xu*, 599 F.3d 452 (5th Cir. 2010)..................................................24

*United States v. Zamora*, 661 F.3d 200 (5th Cir. 2011) ...........................................25

**Statutes**

21 U.S.C. § 846.................................................................................................... 12, 26

**Rules**

Fed. R. Crim. P. 16.....................................................................................................37

Fed. R. Crim. P. 52.....................................................................................................36

Fed. R. Evid. 702 .......................................................................................................38

**Sentencing Guidelines**

U.S.S.G. § 3B1.2.................................................................................................. 42, 43

## Statement of Jurisdiction

The district court had jurisdiction under 18 U.S.C. § 3231. The district court announced sentence and imposed its final judgment on May 22, 2025. ROA.217. A timely notice of appeal was filed on May 23, 2025. ROA.225. This Court now has jurisdiction over this appeal under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

## **Statement of Issues for Review**

1.  Whether the evidence is legally insufficient to support the jury's guilty verdict.

2.  Whether the district court plainly erred by admitting expert testimony about fentanyl.

3.  Whether the district court plainly erred by failing to apply a two-level downward adjustment under U.S.S.G. § 3B1.2(b) because Brown played a minor role.

### Statement of the Case

1. **Prior to trial, Brown insisted that she did not know the vehicle she picked up at the behest of her co-defendant contained drugs.**

Brown was named in a criminal complaint and subsequently arrested. ROA.17. She was appointed a federal public defender, Frank Henderson, to represent her. ROA.18. After a detention hearing in the Magistrate Court on February 22, 2022, Brown was ordered detained. ROA.21. A few weeks later, Brown was charged by indictment with two counts of Conspiracy to Possess with the Intent to Distribute a Controlled Substance, i.e., cocaine and heroin. ROA.23-25; *see* 21 U.S.C. § 846.

A superseding indictment was filed on May 12, 2022, which added a third count: Conspiracy to Distribute and Possess with the Intent to Distribute a Controlled Substance, i.e., fentanyl. ROA.48. Months later, another federal public defender, Douglas H. Schopmeyer, substituted on the case for Mr. Henderson. ROA.58. On March 8, 2023, a second superseding indictment was filed, adding Clarence Nero as a co-defendant to the charges. ROA.67-69.

The government filed a notice of plea agreement on July 28, 2023. ROA.73. On August 2, 2023, Brown appeared with her attorney in front of the Magistrate Court for her rearraignment. ROA.321. During a review of the underlying facts supporting the plea, the court had difficulty understanding whether Brown's conduct met the charge. ROA.341. Brown stated that she was pleading guilty to "trafficking

heroin and fentanyl," but insisted she was not told what she was transporting when asked to drive a vehicle on behalf of her co-defendant. ROA.342. The court commented that the elements require intent and knowledge to join in a conspiracy for distribution of heroin and fentanyl, and "I don't see any knowledge or intent here." ROA.343. Indeed, Brown stated, "[H]ere I am pleading guilty to something I had no knowledge of." ROA.344. The court refused to accept her plea. ROA.344. Brown subsequently asked the district court to appoint her a new attorney (ROA.84), and the request was granted. ROA.351. Heather Fisher was subsequently appointed to represent Brown. ROA.89.

On May 13, 2024, Brown again appeared in court to enter a guilty plea. ROA.353. Again, when asked about the facts underlying her plea, Brown stated she "agreed to pick up a vehicle that was later determined to have drugs in it," again insisting that she did not know the vehicle had drugs when she picked it up. ROA.379. After more back and forth, the court again determined that it did not feel comfortable accepting Brown's plea. ROA.380. On May 30, 2024, another change of plea hearing was held in front of the court. ROA.385. Brown asserted that she did not want to go to trial and would agree that she was in a conspiracy to avoid a harsher penalty, not because it was true. ROA.387. For a third time, the Magistrate Court refused to accept Brown's plea. ROA.387. After this hearing, Ms. Fisher asked to

withdraw from Brown's case (ROA.106), and the district court agreed, appointing Phillip D. Ray. ROA.110. Brown's case was set for trial.

Brown and co-defendant Nero were charged in a third superseding indictment, which contained the same charges with different dates. ROA.132-34. Both parties filed pre-trial motions. The government filed motions in limine to preclude the defense from talking about Brown's pre-arrest statements and "the legality of the traffic stop and the search of the vehicle." ROA.113. Trial counsel for Brown decided not to file a motion to suppress regarding a stop that lasted over 45 minutes while the officer had a hunch drugs were present.

### 2. A jury convicted Brown of conspiring to distribute drugs.

On June 24, 2024, Brown appeared with Mr. Ray for trial. She persisted in her not guilty plea (ROA.393), and a jury was seated.

### a. The Government failed to present any testimony regarding a drug conspiracy.

The government first called Dustin Starks of the Denton County Sheriff's Office as a witness. ROA.546. He indicated his job was to intercept smugglers. ROA.548. On February 14, 2022, Starks participated in the traffic stop of Brown's 2019 white Dodge van rental vehicle due to her "unsafe lane change and following too closely." ROA.550. Starks informed Brown that she was only going to get a warning for the traffic violations. ROA.552. Starks conducted a search on Brown's vehicle for over 45 minutes before finding any drugs. Brown indicated that her

boyfriend, Clarence Nero, had the vehicle's rental agreement because he was the one that rented the car for her in New Orleans, and so she contacted him for the document. ROA.553-54. Brown explained she had traveled from Houston to Flagstaff and was returning from Arizona when she was pulled over. ROA.554. The officer asked Brown to detail her travels because the license plate reader system showed a different route than the one she relayed. ROA.557. Based on the discrepancy in her story from the license plate reader, "her body language, and the things she was telling me about her driving pattern," the officer became suspicious of Brown. ROA.560.

Starks testified that he continued his investigation by asking Brown whether any illegal narcotics were in the vehicle, and that's when her demeanor changed. ROA.562. Starks asked her for consent to search the vehicle, and she provided consent. ROA.563. At that time, Starks began searching the vehicle with help from his partner, who had just arrived at the scene. ROA.563. Starks testified that when they were searching, they discovered a screwdriver in the center console in the back area. ROA.564. Starks believed it was "uncommon for tools to be in rental vehicles," and that something was hidden in the vehicle. ROA.565-66. Starks also found a receipt from Houston in Brown's purse that was from the day before, which contradicted Brown's statement that she had been traveling from Arizona. ROA.567-68. Starks and his partner continued to search the vehicle "for a while," but without

finding anything, they decided to confront Brown about the lies, the receipt, and the screwdriver. ROA.568. Stark testified that Brown became defensive and blamed the screwdriver on the car being picked up in New Orleans. ROA.568-69.

Stark testified that he decided to deploy the K-9 at that time for a full search of the vehicle because he interpreted Brown as revoking her consent to search. ROA.570. Starks continued that the K-9 had a positive alert on the vehicle, which gave probable cause to search the vehicle. ROA.571. The officers viewed a rear speaker with screws missing, and once the other screws and a panel were removed, and then the speaker itself, Stark found plastic vacuum-sealed bags behind the speaker. ROA.573.

The government's next witness was Corey Halfmann, a K-9 handler with the Denton County Sheriff's Office that was present during the traffic stop. Halfmann testified that he deployed the K-9 to conduct an open-air sniff, which resulted in a positive alert to the vehicle. ROA.673. Once he found the screwdriver, Halfmann testified that he observed groove marks on the plastic next to the speaker. ROA.679.

Robert Pircher, a computer forensic analyst with Homeland Security Investigations, testified about conducting the extraction of Brown's cell phone. ROA.690.

The government called Aaron Rimbach, a detective with Arizona's Department of Public Safety, to testify about a traffic stop he conducted on a 2015

red Chevrolet Sonic when he was working drug interdiction on September 12, 2019. ROA.700-01. Rimbach testified that the driver of the vehicle was Jesus Enriquez and large amounts of wrapped U.S. currency were found in the passenger's side of his vehicle. ROA.701-02. Another detective with the Arizona Department of Public Safety, Stephen Cronkite, testified that he was conducting surveillance on a house suspected to be involved with drug trafficking on that same date. ROA.706. While on surveillance, he observed a red passenger car leaving the residence and contacted Rimbach to make a traffic stop. ROA.707. After Rimbach found the U.S. currency in the vehicle, Cronkite testified that he obtained a search warrant for the house, and while waiting for the warrant, a vehicle left the scene driven by Nero. ROA.709. Cronkite testified about a tire that had been cut near the rim in the truck bed that Nero claimed resulted from a blow out of the tire. ROA.717.

Gennesis Claro, a chemist with the Drug Enforcement Administration, testified that he conducted testing on the drugs found in Brown's rental vehicle. ROA.726. His testing indicated the presence of fentanyl and heroin. ROA.726-27.

The government called Department of Homeland Security Special Agent Christopher Hunt to testify about his role as the case agent. Hunt testified that he arranged for Brown's cell phone to be analyzed and made a log of all the communications between Brown and Nero during the relevant time period around the traffic stop. ROA.746-54. Hunt reviewed text messages between Brown and

17

Nero. ROA.774. However, his testimony was limited to only a brief amount of text messages without providing the full context. Some of these messages include:

- Brown sent Nero images related to border check points, including an article on the X-ray technology used at the check point, with the text "This was me today!!" ROA.774-75.

- An article about a traffic stop leading to discovery of 40 pounds of narcotics. ROA.779.

- Brown texts Nero, "325 I owe you because it was 850 owed. This shit is crazy. I'm really feeling like there was no separation. Everything was one," and "I didn't pressure the company for the expenses. And I'm texting because I didn't call. Longest ten minutes ever." ROA.780.

- Brown texts Nero, "When you sit and think again about the money I cost you, please think about the risk I also accepted because of you. And I'm thinking about where my suitcase with the big things is at. So don't ever think I did it again to hurt the company when I was an employee. I went far and beyond the call of duty. And that is priceless." ROA.784.

Hunt speculated that "the company" likely referred to the drug trafficking organization. ROA.784. Hunt also described a series of texts about a truck that Brown had in her possession being broken into, and Nero telling her that she should've left the vehicle at the airport as directed. ROA.788-89. Hunt discussed texts between Brown and Nero discussing rental cars and which vehicles "will not work." ROA.801-02.

Hunt testified about the text messages from the date of the traffic stop on February 14, 2022. Hunt claimed that the messages indicate that Brown purchased a

flight from Houston to Phoenix for the following day; she gets the go ahead to check into the flight, fly to Phoenix, and pick up a rental car. ROA.816, 821. Hunt explained that this rental car is the one that she is later stopped in while traveling in Denton County. ROA.821.

Finally, the government called an expert, Jeff Davis with Denton County Sheriff's Office to discuss fentanyl and how its typically produced and then consumed in pill form. ROA.948. Davis testified that approximately 990,000 pills could be made from the amount of fentanyl found in Brown's vehicle. ROA.953.

**b. Through cross-examination of the government's witnesses, the defense provided the jury with the full context of the relationship between Brown and Nero.**

The defense's case was presented through cross-examination of the government's witnesses. Starks admitted that Brown's story could be consistent with the license plate reads. ROA.638. And insisted that Brown's demeanor changed once she realized the officers were going through her personal belongings. Indeed, no drugs were found in personal belongings.

Brown's trial counsel conducted an extensive cross-examination into Special Agent Hunt, and Hunt agreed there are multiple ways to interpret the text messages. ROA.822. For example, with regards to the truck that got broken into, Hunt testified that it is possible that Brown borrowed Nero's vehicle, it got damaged, and she's paying somebody to fix the damage with insurance. ROA.832. Hunt agreed that

Nero's response that Brown wasn't even supposed to have the vehicle, and that she should've gone and parked it at the airport, is indicative of Brown and Nero ending their relationship. ROA.832. Trial counsel further had Hunt agree that these messages resemble a change in the "dynamics" of Brown and Nero's relationship, and while Hunt may classify all these messages as conspiracy related, it is very possible they were due to the end of their romantic relationship. ROA.834. Trial counsel brought out on cross-examination that during 2021, Brown was struggling financially and trying to do any odd jobs to make money, as a Lyft driver, a hairdresser, etc. ROA.844-45.

Hunt agreed that Brown provided her cell phone password for the agents to search her phone, ROA.824, and that Brown voluntarily met with agents several times. ROA.861. Trial counsel showed the jury a clear picture of the text messages including a full view of the nature of Brown and Nero's romantic relationship. ROA.868-77.

At the end of the government's case, Brown's trial counsel asked for a judgment of acquittal based on there being "no evidence whatsoever regarding [Brown] having intentionally or knowingly participated in a conspiracy." ROA.959. After telling the government it doesn't "need [it] to go through all the facts," the district court overruled the motion. ROA.960.

During closing argument, the government claimed the evidence showed that Brown and Nero were "in it together"; an agreement was made when "he rented the car," and "she was driving." ROA.971. Brown's trial counsel focused his argument on the romantic relationship between Nero and Brown (ROA.1002-04). Counsel argued that the "reasonable conclusion" of what happened prior to the traffic stop was that Nero asked her to pick up a rental vehicle and return it for him. ROA.1009. He argued that Brown did not know there were drugs in the vehicle that was searched. ROA.1012. After hearing the arguments, the jury returned a verdict of guilty as to Count One and Two. ROA.1057-58.

### 3. At sentencing, the district court imposed a 188-month sentence.

Brown appeared for sentencing at the district court on May 22, 2025. Neither side filed objections to the presentence report. ROA.1069. Brown's total offense level was calculated as 34 and her criminal history category as III, which resulted in a guidelines range of 188 to 235 months. ROA.1070.

Brown's attorney argued that she was far less culpable than Nero and thus deserved a reduced sentence of 160 months. ROA.1071, 1073. Mr. Ray argued that Brown had no financial gain compared to the money Nero made during the conspiracy—more than a million dollars. ROA.1072. And he pointed out that Brown only engaged in this conduct due to her relationship with Nero; she was thus very unlikely to re-offend upon her release from prison. ROA.1072. The government

claimed that a 188-month sentence was "absolutely justified" because of her "integral" role in the conspiracy. ROA.1073. But the government agreed that Brown was a smaller player than Nero. ROA.1074. Brown then addressed the court and begged for mercy. She explained that she had just gotten out of a 30-year relationship when she met Nero and was vulnerable to his requests. ROA.1077.

After hearing these arguments, the district court imposed a sentence of 188 months' imprisonment. ROA.1078. The court noted that she received a bottom of the guideline sentence due to her counsel's arguments on her behalf. ROA.1078. Brown's attorney indicated that she would be filing a notice of appeal (ROA.1082), and one was submitted the next day on May 23, 2025. ROA.225.

## Summary of the Arguments

Brown raises several grounds challenging her convictions and sentence. First, Brown asserts that the evidence was not sufficient to support the guilty verdicts. Because her counsel argued this issue in a Rule 29 motion, Brown insists that this Court should review de novo. Due to the limited evidence presented by the government, predominately including text messages between Brown and co-defendant Nero, and the February 14, 2022, traffic stop, where kilogram quantities of drugs were found hidden in the rental vehicle Brown was driving on behalf of Nero, the government did not prove that Brown knowingly entered into an agreement with Nero; that Brown intentionally or knowingly participated in a

conspiracy; and that Brown knew the drug amounts contained in the vehicle. Second, the district court plainly erred by admitting Jeff Davis's expert testimony about fentanyl because the production of fentanyl into pills, drug distribution networks, and the street value of fentanyl were not issues in the case. Finally, the district court plainly erred at sentencing because it failed to apply a two-level minor role adjustment under U.S.S.G. § 3B1.2(b) when Brown clearly played a minor role as a courier.

## Arguments

**1. The evidence is legally insufficient to support the jury's guilty verdicts.**

### a. This Court's review should be de novo.

A general challenge to the sufficiency of the evidence preserves de novo review as to all potential sufficiency issues. *United States v. Brown*, 727 F.3d 329, 335 (5th Cir. 2013). But if a defendant asserts "specific grounds for a specific element of a specific count" in her motion for judgment of acquittal under Federal Rules of Criminal Procedure 29, the defendant fails to preserve any other grounds. *United States v. Daniels*, 930 F.3d 393, 402 (5th Cir. 2019) (quoting *United States v. Brown*, 727 F.3d 329, 335 (5th Cir. 2013)).

Here, in her oral motion for a judgment of acquittal, Brown argued generally that "there is no evidence whatsoever regarding [her] having intentionally or knowingly participated in a conspiracy." ROA.959. The district court overruled the

23

motion. ROA.960. Because no defensive evidence was presented, there was no need to reassert the motion after the court denied his original motion. Brown's argument preserves the error, and this Court should therefore review de novo. *United States v. Xu*, 599 F.3d 452, 453 (5th Cir. 2010).

This Court's review, however, remains highly deferential to the jury's verdict, and this Court will affirm unless, viewing the evidence and reasonable inferences in the light most favorable to the verdict, no rational jury "could have found the essential elements of the offense to be satisfied beyond a reasonable doubt." *United States v. Bowen*, 818 F.3d 179, 186 (5th Cir. 2016); *see also United States v. Miles*, 360 F.3d 472, 478 (5th Cir. 2004) (vacating a jury conviction when "a rational jury could not find" an essential element of the crime). But this Court does not "fulfill [its] duty through rote incantation of these principles followed by summary affirmance." *United States v. Long*, 905 F.2d 1572, 1576 (D.C. Cir. 1990). Rather, this Court "must ensure that the evidence adduced at trial is sufficient to support a verdict as a matter of law." *Id.* To that end, "a verdict may not rest on mere suspicion, speculation, or conjecture, or on an overly attenuated piling of inference on inference." *United States v. Pettigrew*, 77 F.3d 1500, 1521 (5th Cir. 1996). Although a jury may make factually based inferences, "a conviction cannot rest of an unwarranted inference, the determination of which is a matter of law." *United States v. Fitzharris*, 633 F.2d 416, 422 (5th Cir. 1980).

**b. The Government failed to prove that Brown knowingly
entered into an agreement.**

To establish a conspiracy under 21 U.S.C. § 846, the government must prove that: "(1) an agreement existed between two or more persons to violate federal narcotics law, (2) the defendant knew of the existence of the agreement, and (3) the defendant voluntarily participated in the conspiracy." *United States v. Thomas*, 690 F.3d 358, 366 (5th Cir. 2012). "An express agreement is not required; a tacit, mutual agreement with common purpose, design, and understanding will suffice." *United States v. Zamora*, 661 F.3d 200, 209 (5th Cir. 2011). "[K]knowledge of a conspiracy and voluntary participation may be inferred from a collection of circumstances." *United States v. Thomas*, 690 F.3d 358 (5th Cir. 2012) (quoting *United States v. Watkins*, 591 F.3d 780, 788 (5th Cir. 2009)). In this case, Brown was charged by indictment with conspiracy to possess with the intent to distribute heroin and fentanyl. The evidence was insufficient to support the conspiracy convictions because the government did not prove Brown knowingly entered into an agreement.

The Government's theory was that (1) drugs were hidden in a rental car driven by Brown; (2) Brown and Nero texted; and (3) because Brown and Nero knew each other, Brown must be involved in a drug conspiracy. However, no testimony was elicited from a coconspirator as to Brown's role, or if she even had a role, let alone agreed to participate in drug distribution. In relevant part, at least two people must reach an agreement to possess with the intent to distribute heroin and fentanyl. *See*

25

21 U.S.C. § 846. And conspiracy "has two intent elements—intent to further the unlawful purpose and the level of intent required for proving the underlying substantive offense." *United States v. Nora*, 988 F.3d 823, 830 (5th Cir. 2021) (quoting *United States v. Brooks*, 681 F.3d 678, 699 (5th Cir. 2012)). The government failed to present any evidence to show that Brown had an agreement with Nero and intended to further the unlawful purpose of the agreement. *See id.* There was no testimony from other co-conspirators about the nature of Brown's role in the organization. Instead, the government's primary evidence of an "agreement" included text messages between Nero and Brown. However, as shown on cross-examination, many of the messages were up for interpretation, and many showcased the romantic relationship between Brown and Nero, not a criminal partnership.

The only possible evidence presented to show that Brown intended to further the unlawful purpose of the agreement was at the February 14, 2022, traffic stop when drugs were discovered in the rental vehicle she was driving. The concern being that Brown consistently maintained she was unaware that drugs were in that vehicle. The officers' testimony shows that Brown was upset about the idea of the officers searching through her purse and suitcase—her personal items—but not the vehicle, and they were able to discern this from her demeanor shift. ROA.642. The best evidence of the plausibility of Brown not knowing about the drugs is evidence of the officers' search—it took experienced, trained law enforcement officials over 45

minutes to find the drugs (Gov. Ex. 1A), and they were only able to do so after noticing very discrete grooving in the plastic. The officer then was required to unscrew the front of a speaker and take down another panel before the drugs were uncovered. It's wholly possible that Brown was in the dark about the location of the drugs as well, and therefore, she didn't have the intent to further any agreement with Nero.

Viewing the evidence in the light most deferential to the verdict, it is still difficult to show that a reasonable jury could have concluded that Brown conspired to possess with intent to distribute controlled substances. The lack of evidence speaks just as loudly as evidence littered with speculation. There is seemingly only one connection with Brown and the drugs: Nero. However the text messages don't point to an agreement to participate in a conspiracy as they are missing several important factors: no connection to Brown and the so called "company" responsible for the drugs (source of supply); no evidence pointing to who facilitated the selling drugs; no facts supporting an infrastructure and support to distribute; and lastly, no evidence that anyone furnished Brown with any drugs. Mere presence at the scene of the crime or close association with a coconspirator will not support the inference of a conspiracy. *United States v. Davis*, 666 F.2d 195, 201 (5th Cir. 1982). Just because Brown was in a romantic relationship with Brown, that cannot prove her knowing involvement in the conspiracy. *See United States v. Ritz*, 548 F.2d 510 (5th

27

Cir. 1977); *United States v. Duckett*, 550 F.2d 1027 (5th Cir. 1977). This case boils down to is that Brown agreed to drive a rental car for her boyfriend. There government's case provided no evidence to show she knowingly agreed to participate in a drug conspiracy.

### c.  The Government failed to prove that Brown intentionally or knowingly participated in a conspiracy

Not only did the Government have to prove that Brown knowingly entered into an agreement, but that she intentionally or knowingly participated in the agreement. *United States v. Suarez*, 879 F.3d 626, 631 (5th Cir. 2018). The Government did not show that Brown knowingly entered into an agreement to transport narcotics. Therefore, the evidence was insufficient to satisfy their burden as possession of a large quantity of drugs alone may not serve as sufficient proof of a conspiracy. *Compare United States v. Delgado*, 672 F.3d 320, 334 (5th Cir. 2012) (stating that although "possession of a large quantity of drugs"—in that case 500 pounds—"is not, by itself, sufficient to support a conspiracy conviction," it "can help justify the inference that more than one person must be involved in moving the large quantity toward its ultimate dispersal"), *with United States v. Michelena-Orovio*, 719 F.2d 738, 751–52 (5th Cir. 1983) (finding that a single act of importing twelve tons of marijuana, "more than mere mortals could personally consume in a lifetime," was enough to prove a conspiracy to possess with intent to distribute).

The first view into the world of Brown and Nero's relationship involves Brown driving a car void of any drugs. Looking back at the first text between Brown and Nero on October 13, 2019, is informative. Her first texts were two photographs to Nero, a CBP checkpoint and a handheld x-ray imager. ROA.3394-95. She later messaged that: ". . . I threw up in the building," and, "Yes . . . Can't wait to tell you . . . I thought they took my phone but it was all the way on the back of the dashboard." ROA.3396-98. There were additional texts at this time about a news article detailing the Government's $30 million X-ray technology at the border, including handheld X-rays that penetrate vehicles to identify hidden cavities. ROA.775-76. So Brown, two years prior to her arrest, is armed with information that no drugs were in a car she was driving for Nero - after a handheld X-ray machine scanned her car as well as being stopped at a checkpoint. It is more than reasonable to believe that Brown's role was to drive vehicles for Nero from point A to point B without an agreement to transport drugs. Brown's role was simple, drive a car when Nero was unavailable from one location to the next. No evidence put forward from the Government suggests Brown went to a specific location to deliver drugs to an individual, pick up money, or pick up drugs from a coconspirator and deliver them to Nero. In fact, the

evidence put forward through Hunt's testimony and texts from the Government show just that[1]:

- Brown sent Nero images in 2019, related to border check points, including an article on the X-ray technology used at the check point, with the text "This was me today!!" ROA.774-75, 3394-98

- Brown texts Nero in 2019, "325 I owe you because it was 850 owed. This shit is crazy. I'm really feeling like there was no separation. Everything was one," and "I didn't pressure the company for the expenses. And I'm texting because I didn't call. Longest ten minutes ever." ROA.780, 3416

- Brown texts Nero in 2019, "When you sit and think again about the money I cost you, please think about the risk I also accepted because of you. And I'm thinking about where my suitcase with the big things is at. So don't ever think I did it again to hurt the company when I was an employee. I went far and beyond the call of duty. And that is priceless." ROA.784, 3423.

- Brown texts Nero in 2019, "They rummaged into the glove box and armrest. Wasn't nothing stolen -- nothing to take." ROA. 787, 3431.

- Brown, again in 2019 texts, "I done stored shit and risked my fucking freedom all for nothing." ROA.792, 3340.

Indeed, the messages between Brown and Nero don't use slang words for drugs, or discuss extensive travel from Brown, nor did the Government link payments from Nero to Brown for her alleged participation in a large drug conspiracy. The Government uses terms like "drug rip" to try to establish that while Brown was in

---

[1] All the text exchanges, including 1,800 total pages, were made available to the jury, but the Government focused on a separate exhibit that included only 146 pages of messages.

possession of Nero's truck, it was targeted for the sole purpose of finding drugs or money. ROA.787-88. Instead, the texts show that no drugs were found and the massages surrounding this conversation were about insurance and Brown purchasing the truck from Nero. When trial counsel asked Hunt if the truck got damaged, that she's paying somebody for insurance, and she's letting him know she's got to have it fixed, to which Hunt replies "Yes," That's what it seems like the communication is stating. ROA. 832. Again, the Government did not provide a nexus to show that Brown, even in 2019, was fully aware that she was involved in a drug conspiracy, just a romantic, tumultuous relationship with Nero who had a wife.

Additionally, without direct evidence, the Government's primary witness relied on speculation. Brown's trial counsel asked, "But there is no evidence whatsoever that that drive she's referring to has anything to do with drugs, is there?" Hunt responds, "I can speculate if you'd like." ROA. 912. Out of 1,800 pages of text messages, Hunt focused on a fraction in an attempt to show Brown was involved in a drug conspiracy.

Closer to Brown's arrest in February 2021, the Government focused on Brown texting Nero, "So we on, correct, because my bag is still packed from months ago," ROA.808, 3497. And finally closer to her arrest, there are text messages showing that Brown boarded a flight and discussions about her picking up a car. ROA.815-

821. Brown doesn't dispute she drove a car on behalf of Nero, but that is the extent of their agreement and her knowledge – simply to drive a car for Nero.

For instance, trial counsel conducted an extensive cross-examination of Hunt, and he agreed that there are multiple ways to interpret the text messages, including that the messages reflected a romantic relationship between Brown and Nero. ROA.822. Hunt agreed that Nero's response that Brown wasn't even supposed to have the vehicle, and that she should've gone and parked it at the airport, is indicative of Brown and Nero ending their relationship. ROA.832. Trial counsel further had Hunt agree that these messages resemble a change in the "dynamics" of Brown and Nero's relationship, and while Hunt may classify all these messages as conspiracy related, it is very possible they were due to the end of their romantic relationship. ROA.834. Trial counsel brought out on cross-examination that during 2021, Brown was struggling financially and trying to do any odd jobs to make money, as a Lyft driver, a hairdresser, etc. ROA.844-45. Trial counsel showed the jury a clear picture of the text messages showing the nature of Brown and Nero's romantic relationship, not one of a drug conspiracy. ROA.868-77.

The Government extrapolated empty evidence of text messages from the point of Brown's arrest in hopes of finding a link to drugs – their evidence fell short. Again, they failed to elicit direct testimony regarding Brown's involvement. Instead, the government relied on Brown's romantic relationship with Nero, took messages

out of context, and of course because there were drugs in the car, that meant she had knowledge she was involved in a drug conspiracy. Because the Government did not prove the elements of conspiracy, Brown's conviction should be overturned.

### d. The government failed to prove that Brown had knowledge of the amounts of drugs contained in the rental vehicle.

Brown did not know drugs were present inside the rental vehicle, let alone the total amount of drugs. The Government thus failed to prove that Brown specifically conspired to possess with the intent to distribute one kilogram or more of a mixture or substance containing a detectable amount of heroin and 400 grams or more of a mixture or substance containing a detectable amount of fentanyl in violation of 21 U.S.C. § 841(b)(1)(A). Drug quantity requiring a mandatory minimum must be proven beyond a reasonable doubt. *United States v. Gonzalez*, 907 F.3d 869, 875 (5th Cir. 2018). The defendant's responsibility is limited to the amount with which she was directly involved or that was reasonably foreseeable to her. *United States v. Haines*, 803 F.3d 713, 740 (5th Cir. 2015).

The Government only presented evidence through lab reports and an expert that showed the amount of fentanyl and heroin in the vehicle but never tied Brown with that knowledge. At best, the Government brought evidence that after 45 minutes of searching a vehicle, Brown was in constructive possession of drugs. However, no text messages, ledgers, or any evidence exists to show Brown knew the quantity of drugs present in the vehicle. Even under the Government's theory, Brown drove

33

vehicles on behalf of Nero. No evidence was presented in the form of testimony or text messages where Brown was discussing heroin or fentanyl. Likewise, the Government's expert witnesses, Hunt and Davis, did not testify that Brown was using code words, like M30's for fentanyl or commonly used words for drugs. Additionally, Nero was not found with drugs in his possession. Leaving the possibility that at the very least, Brown did not know the nature or type of drugs she was transporting. Therefore, unlike other type of drug dealers, evidence of Brown's involvement in "trafficking is limited." Indeed, the government acknowledged that Brown's role was less than Nero's. ROA.1074

In *United States v. McClaren*, 13 F.4th 386 (5th Cir. 2021), the Fifth Circuit determined whether the co-defendants were able to foresee the amount of drugs involved in the conspiracy and vacated one co-defendant's sentence for drug-trafficking conspiracy on this basis. *Id.* at 412. The amount of drugs charged by the government exceeded the amount of drugs seized by law enforcement. *Id.* The government therefore was trying to extrapolate the total amount of drugs by considering the average deal and the frequency of the conspirators' drug deals to reach a total amount of 280 grams of crack cocaine. *Id.* One defendant in particular, however, was limited to "minimal drug dealing." *Id.* This Court considered that although it's fair to assume she recognized that the drug organization extended beyond her universe of involvement, it could not say that she was either directly

involved in, or reasonably could foresee, trafficking in sizable amounts based on the evidence presented. *Id.* Because this Court was "not permitted to simply assume that [the defendant] was aware of the drug amount scope of the conspiracy because [she] participated in the conspiracy," the defendant's sentence was vacated. *Id.*

Similarly, here, because there is no evidence that Brown participated in other drug deals, there is no evidence to presume she could've foreseen the amount of drugs hidden in the rental vehicle. Again, Brown was not tied to any other drug deals, so there is no basis to show that she had knowledge of what types of drug amounts were being distributed across the conspiracy. Like the co-defendant in *McClaren*, Brown's sentence should be vacated, too.

## 2. The trial court admitted improper expert testimony about the logistics surrounding the distribution of fentanyl.

### a. The expert provided testimony about the production of fentanyl and its street value.

As its last witness, the government called Jeff Davis, a commander in the Special Operations Division at the Denton County Sheriff's Office. ROA.947. Davis testified as an expert generally about fentanyl and how it is typically consumed. ROA.949. Davis explained how fentanyl is converted into pill form by a pill press that can be purchased online along with the filler material for the pills. ROA.949-50. Although he had no participation in the case's investigation, Davis was asked to look at the drugs found in Brown's car and estimate how many pills could be made

from the kilograms of fentanyl. ROA.952. He then estimated the drug's street value at over $9 million based on charging $10 per pill. ROA.954. On cross-examination, David admitted that he did not know if the cases involved any pill presses or the weight of the pills. ROA.956.

### b. Because Brown's attorney did not object to the admission of the testimony, this Court reviews for plain error.

Because Brown's attorney did not object to the admissibility of the expert witness, this Court's review is for plain error. *United States v. Ramirez-Velasquez*, 322 F.3d 868, 878-79 (5th Cir. 2003). Under this standard of review, this Court cannot correct an error that a defendant failed to raise in the district court unless the error is plain and also affects the defendant's substantial rights. *See United States v. Garcia*, 567 F.3d 721, 726 (5th Cir. 2009); Fed. R. Crim. P. 52(b). An error is plain if it is at least "clear under current law." *United States v. Olano*, 507 U.S. 725, 734 (1993). As a general rule, an error affects a defendant's substantial rights only if the error was prejudicial. *Id.* Error is prejudicial if there is a reasonable probability that the result of the proceedings would have been different but for the error. *See United States v. Holmes*, 406 F.3d 337, 365 (5th Cir. 2005) (citing *United States v. Dominguez Benitez*, 542 U.S. 74, 81 (2004)). The probability of a different result must be sufficient to undermine confidence in the outcome of the proceedings. *Id.* The defendant bears the burden of demonstrating that a plain error affects his substantial rights. *Olano*, 507 U.S. at 734-35. Finally, even if a plain error affects a

defendant's substantial rights, this Court does not exercise its discretion to correct the error unless it seriously affects the fairness, integrity, and public reputation of the judicial proceeding. *Id.* at 735; *United States v. Mares*, 402 F.3d 511, 520 (5th Cir. 2005).

### c.  The error was plain.

First and foremost, Federal Rule of Criminal Procedure 16(a)(1)(G) requires the government to disclose the expert testimony that it plans to elicit at trial. To comply with Rule 16, the Government must provide a written statement containing: (1) "a complete statement of all opinions that the government will elicit from the witness," (2) "the bases or reasons" for those opinions, (3) the witnesses qualifications, and (4) a list of all cases the witness testified at as an expert at trial or by deposition in the preceding four years. Fed. R. Crim. P. 16(a)(1)(G)(iii). The advisory committee note to the 2022 amendment to the Rule explains that it "is intended to facilitate trial preparation, allowing the parties a fair opportunity to prepare to cross-examine expert witnesses and secure opposing expert testimony if needed." *Id.* advisory committee's note to 2022 amendment. The Note goes on to explain that "the amendment requires a complete statement of all opinions that the expert will provide but does not require a verbatim recitation of the testimony the expert will give at trial." *Id.* Here, the Government failed to comply with Rule 16 and provided late notice to the defense.

On June 21, 2024, three days prior to trial, the Government filed an amended notice of experts. ROA.171-74. This notice included a different "drug distribution expert," Captain Jeff Davis, than previously listed, just four days prior. ROA.166. The Government provided a rote general statement about Davis's expertise, but failed to include studies relied upon, Davis's prior experience, Davis's prior testimony in such cases, nor stated how Davis would have knowledge of the packaging and storing of heroin and fentanyl for transport, the methodology for pill making using heroin and fentanyl, or the value of the drugs. ROA.166. Therefore, the notice fails to connect Davis's testimony about fentanyl generally to the facts of this case. *See United States v. Hall,* 653 F.2d 1002, 1005–06 (5th Cir. 1991) (finding that a DEA agent's expert testimony on purely DEA investigative procedures in general and hypothetical terms was irrelevant because he discussed no facts bearing on the prosecution of the defendant). To comply with Rule 16, the Government should have explained how Davis's opinions relate to the facts of this case, not just about fentanyl and heroin generally. Indeed, Davis didn't testify with regards to "common slang or codes and with codes that were specific to this case." ROA.172.

Second, Davis's testimony was irrelevant and prejudicial. Under the Federal Rules of Evidence, a qualified expert witness may offer reliable opinion testimony if specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue. Fed. R. Evid. 702. In this case, however, Davis's testimony

38

was wholly irrelevant to the issues at hand. Davis was essentially called to testify about how terrible of a drug fentanyl is and the method for converting fentanyl powder to pills. But there was no testimony in the case about fentanyl pills. The only drugs seized in the case was the kilogram quantities of fentanyl and heroin-fentanyl mixture from Brown's rental vehicle and whether it's later converted to pill form was not relevant to the case. Davis then went on to explain how fentanyl is distributed from China and Mexico into the United States. ROA.950. Again, there were no relevant issues or testimony in the case that warranted an expert's opinion about this information. Finally, Davis spent time explaining the approximate street value of fentanyl pills and how much could be made if the fentanyl found in Brown's car was converted to pill form and then sold on the street. ROA.954. But again, the value of fentanyl was not an issue as there was no large amount of cash involved in the case.

In total, none of this testimony was relevant to the case at hand. *Compare United States v. Fuller*, 974 F.2d 1474, 1482-83 (5th Cir. 1992) (permitting testimony about how the facts of bearing on the investigation for drug money laundering lead to the arrest of the defendants); *with United States v. Hall*, 653 F.2d 1002, 1005-06 (5th Cir. 1991). It was therefore plain error for this testimony to be admissible.

### d. The testimony affected Brown's substantial rights.

The error of admitting this testimony was plain and it affected Brown's substantial rights. Again, error is prejudicial if it is shown that the result of the proceedings would have been different but for the error. *Holmes*, 406 F.3d at 365.

Davis's testimony was used as a scare tactic to show that because fentanyl is such an awful drug, Brown must be guilty and involved with Nero's drug dealing. Instead of focusing on the issues of the case, Davis's testimony brought out all sorts of irrelevant topics such as pill pressing, distributing networks for drug trafficking organizations, and how much money these organizations can make by selling the drugs. None of these issues, however, played a role in determining Brown's guilt in the charged offense. There was no evidence that Brown pressed pills or made money by distributing fentanyl pills. Regardless, the jury heard Davis's testimony and only could conclude that someone involved with fentanyl should be convicted. Moreover, the jury did not hear this type of testimony from any other witness. If Davis's testimony was kept out like it should've been, then the jury would not have heard the testimony from another witness.

Without this testimony, the jury would be left with the weak, circumstantial evidence of Brown's text messages with Nero and the traffic stop where she insisted that she did not know drugs were hidden in the vehicle. Because this left the jury to convict Brown on an improper basis, the error seriously affected the fairness,

integrity, and public reputation of the judicial proceeding too. *See Mares*, 402 F.3d at 520.

3. **The district court committed plain error by failing to apply a two-level downward adjustment under U.S.S.G. § 3B1.2(b) because Brown played a minor role.**

Brown's role within the conspiracy was minor under U.S.S.G. § 3B1.2(b). At best, the government proved that Brown transported either money or drugs from point A to B, acting as a courier.

 a. **This Court reviews for plain error.**

While trial counsel argued that Brown's role was minor at sentencing, he did not object in the district court to the failure to reduce her base offense as a minor participant. This Court therefore reviews this issue for plain error. *United States v. Martinez-Larraga*, 517 F.3d 258, 272 (5th Cir. 2008) (citing *United States v. Washington*, 480 F.3d 309, 313 (5th Cir. 2007)). Whether a defendant receives a minor role reduction is a finding of fact that is not "clearly erroneous as long as it[s] exclusion" is plausible considering the record as a whole." *United States v. Maldonado*, No. 23-50056, 2024 WL 962377, at *3 (5th Cir. 2024) (quoting *United States v. Jeffries*, 587 F.3d 690, 692 (5th Cir. 2009)). Brown bears the burden of proving that a downward adjustment based on minor role is warranted. *Id.*

### b. Brown clearly acted in a minor role.

The Sentencing Guidelines provides for a two-level reduction "[i]f the defendant was a minor participant in any criminal activity." U.S.S.G. § 3B1.2(b). A § 3B1.2 "minor participant" is defined as "a defendant . . . who is less culpable than most other participants in the criminal activity, but whose role could not be described as minimal." U.S.S.G. § 3B1.2, cmt. n.5. A review of the totality of the circumstances controls the determination of whether to apply a minor participant adjustment and therefore is heavily dependent upon the facts of the particular case. U.S.S.G. § 3B1.2, cmt. n.3(C).

First, the presentence report only held Brown accountable for the drug amounts found on February 14, 2022, the date of her arrest. Dkt. 107 at 10-11. Her limited function was that of a courier, or as the Government put it: "Her role is akin to an airline pilot for a commercial airline or a bus driver for Greyhound." ROA. 1073. Just as the guidelines state, a defendant, like Brown, who is convicted of a drug trafficking offense, whose participation in that offense was limited to transporting or storing drugs and who is accountable under § 1B1.3 only for the quantity of drugs the defendant personally transported or stored, may receive an adjustment under this guideline. U.S.S.G. § 3B1.2, cmt. n.3(A).

Additionally, Brown did not plan or organize; she did not exercise decision-making authority; and she did not have any discretion as it pertained to the amount

being delivered and who it would be delivered to. *See* U.S.S.G. § 3B1.2, cmt. n.3(C). Brown, unlike Nero, was not aware of the overall scope of the conspiracy. Even the government admitted at sentencing that it's "true" Brown played a smaller role than Nero. ROA.1074. At trial, the government portrayed how a drug conspiracy involving fentanyl would operate:

1. Go online and find a supplier that supplied a pill press. ROA.949.

2. Maintain a source of supply, frequently from China, who can regularly supply fentanyl into the United States that you could then use a pill press to press into the desired tablet that you were going to counterfeit. ROA 949-50.

3. Alternatively, acquire a supply from Mexico where the drug-trafficking organizations who have preestablished trafficking routes will then do the pressing and what they need to do down there and then move it into the United States on the same routes they use to move methamphetamine, cocaine, heroin, and other drugs into the United States. ROA.950.

Brown's role as driving rental cars for Nero pales in comparison to the above-described functions of a drug conspiracy the Government presented. Brown's limited involvement was of no consequence, as couriers are a dime a dozen. Brown's conduct therefore was "peripheral to the advancement of the illicit activity." *See United States v. Villanueva*, 408 F.3d 193, 204 (5th Cir. 2005). Because it's clear

43

that Brown played a minor role, this Court plainly erred by not providing a two-level adjustment.

### c. The district court's failure to account for Brown's minor role by a two-level adjustment substantially affected her rights.

Next, Brown must show that the district court's clear error affected her substantial rights. *United States v. John*, 597 F.3d 263, 284 (5th Cir. 2010). A sentencing error affects a defendant's substantial rights if she can show a reasonable probability that, but for the district court's misapplication of the Guidelines, she would have received a lesser sentence. *United States v. Blocker*, 612 F.3d 413, 416-17 (5th Cir. 2010). This Court's precedent shows that absent additional evidence, a defendant has shown a reasonable probability that she would have received a lesser sentence when (1) the district court mistakenly calculates the wrong Guidelines range, (2) the incorrect range is significantly higher than the true Guidelines range, and (3) the defendant is sentenced within the incorrect range. *John*, 592 F.3d at 284-85 (holding that an imposed sentence affects a defendant's substantial rights when it significantly exceeds the high- and low-ends of applicable Guidelines range).

At the district court, Brown's guidelines range was calculated as 188 to 235 months imprisonment. But including a two-level minor role adjustment brings Brown's range down to 108 to 135 months.[2] Brown was sentenced to 188 months'

---

[2] Pursuant to the mitigating role provisions in U.S.S.G. § 2D1.1(a)(5), and the two-level reduction under § 3B1.2(b), Brown would receive a three-level reduction and a two-level reduction.

imprisonment, a low-end guidelines sentence based on the range presented by the district court. Because the correct guidelines range is significantly different, this Court must find that Brown's rights were substantially affected. *See John*, 597 F.3d at 284-85.

Brown recognizes, however, that even where a defendant's substantial rights are violated, this Court retains discretion to correct the reversible plain error only if it seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Puckett v. United States*, 556 U.S. 129 (2009). The substantial disparity between the imposed sentence, and the applicable guidelines range warrants the exercise of this Court's discretion. *See United States v. Gonzalez-Terrazas*, 529 F.3d 293, 299 (5th Cir. 2008) (concluding that the imposition of a sentence that was substantially greater than the guidelines range affected the defendant's substantial rights and the fairness of the judicial proceeding). This Court should vacate and remand for resentencing on this basis.

## <u>Conclusion</u>

For these reasons, Quanita Brown respectfully requests this Court to set aside her judgment. Alternatively Brown requests this Court vacate her conviction and remand for a new trial or vacate her sentence and remand for a new sentencing hearing.

Respectfully submitted,

/s/ *J. Joseph Mongaras, Jr.*
J. Joseph Mongaras, Jr.
Texas Bar No. 24039975
jjm@udashenanton.com

Udashen | Anton
8150 N. Central Expressway
Suite M1101
Dallas, Texas 75206
(214) 468-8100
(214) 468-8104 - fax

*Attorney for Quanita Brown*

### **Certificate of Service**

I certify that on December 23, 2025, a true and correct copy of Appellant's

Brief was served upon all counsel of record through the Court's ECF system

/s/ *J. Joseph Mongaras, Jr.*
J. Joseph Mongaras, Jr.

### **Certificate of Service to Appellant**

Undersigned counsel also certifies that a copy of the brief was mailed to

Quanita Brown, Register Number 25106-034, FCI Estill, P.O. Box 699, Estill, South

Carolina 29918.

/s/ *J. Joseph Mongaras, Jr.*
J. Joseph Mongaras, Jr.

## Certificate of Compliance

1. This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief contains 8,535 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft® Office Word 2016 in 14-Point Times New Roman font.

Date:  December 23, 2025

/s/ *J. Joseph Mongaras, Jr.*
J. Joseph Mongaras, Jr.